JENNIFER WALKER ELROD, Circuit Judge:
Rasheed Babatunde Kayode was sentenced to 210 months’ imprisonment after pleading guilty to mail fraud, aggravated identity theft, and unlawful procurement of naturalization. Kayode subsequently petitioned the district court to vacate his plea agreement pursuant to 28 U.S.C. § 2255, arguing that his counsel failed to warn him of the likely deportation consequences of his guilty plea. The district court granted the government’s motion for summary judgment, and denied Kayode’s § 2255 motion and certificate of appealability. Because Kayode has failed to show prejudice as a result of his counsel’s failure to advise him of the likely deportation consequences of his plea agreement, we AFFIRM the judgment of the district court.
I.
Kayode became a naturalized citizen on June 21, 2006. On May 14, 2008, postal inspectors searched Kayode’s home and seized more than 350 credit cards, numerous credit reports, several hundred letters, *721 about 800 pre-approved credit card applications, bank statements, credit card statements, checkbooks, other mail meant for people other than Kayode, as well as social security numbers, dates of birth, and other personal identification information belonging to a large number of individuals. In addition, the postal inspectors discovered $63,000 in U.S. currency, an undetermined amount of foreign currency, and various forms of merchandise such as flat-screen television sets and laptop computers that appeared to have been purchased with fraudulent credit cards.
Kayode was indicted on June 11, 2008, in a forty-four count indictment that included twenty counts of mail fraud, twenty counts of bank fraud, one count of possession of stolen mail, one count of fraud with access devices, one count of aggravated identity theft, and one count of unlawful procurement of naturalization. On September 23, 2008, Kayode entered pleas of guilty to mail fraud (Count 1), aggravated identity theft (Count 43), and to unlawful procurement of naturalization (Count 44) pursuant to a plea agreement. In exchange for Kayode’s guilty plea, the government agreed to dismiss the remaining charges in the indictment, to request a reduction for acceptance of responsibility, and not to request an upward departure.
The plea agreement that Kayode signed stated:
On June 21, 2006, the defendant became a naturalized U.S. citizen.... On that date and on April 17, 2006, the defendant stated under oath that he had not knowingly committed any crime or offense for which he had not been arrested. This statement was materially false because the defendant knew at the time he swore under oath that he had, in fact, committed the crimes of mail fraud, bank fraud, possession of stolen mail and fraud in connection with access devices. The defendant was therefore ineligible to be admitted to citizenship because he was unable to establish good moral character.
Kayode contends that he only learned of the deportation consequences of the plea agreement during his September 23, 2008, rearraignment hearing. Before accepting his guilty plea, the district court engaged in the following colloquy with Kayode. First, the district court said, “I’m going to mention also to you that there is a possibility, if convicted or found guilty of this count, there might be a loss of citizenship that was given to you through naturalization.” When asked if he understood the “nature of the charges and the possible penalties pending against you,” Kayode answered, ‘Yes, Your Honor.” The district court then asked Kayode if he understood that if his citizenship was revoked that “conviction may lead to your deportation or exclusion from the country.” Kay-ode responded, “Yes, sir.”
Later during the same hearing the district court asked Kayode whether he intended to commit the acts described in the pre-sentencing investigation report (PSR) and Kayode responded, “No, sir.” The district court then warned Kayode that he would have to go to trial on all forty-four counts if Kayode’s answer conflicted with his plea agreement, and sent Kayode to meet with his attorney. After meeting with his attorney, Kayode told the district court that he intended to commit the acts described in the PSR and knew what he was doing at the time. The PSR itself says that “due to the offense of conviction, it appears the defendant is deportable and should be stripped of his naturalization.” Kayode stated on the record at the hearing that he had read and understood the plea agreement. The district court then accepted Kayode’s plea.
*722 On April 15, 2009, Kayode moved to withdraw his guilty plea, alleging that he was “concerned” about the waiver of his right to appeal, that he had no recollection of the case or his discussions with counsel because of prescription medication he was taking for a health condition, and that he “want[ed] to take his case to trial and state his innocence.” The district court reviewed each medication Kayode took and confirmed that none of the medications hampered his mental competence. The district court denied this motion and the case proceeded to sentencing.
The district court then sentenced Kay-ode to 210 months on Count 1, 120 months on Count 44 to run concurrently to Count 1, and 24 months on Count 43 to run consecutively to Count 1, for a total imprisonment of 234 months. The district court also ordered Kayode to pay a total restitution of $24,865.94 to three financial institutions. In a separate appeal, we vacated Kayode’s conviction and sentence for Count 43, and remanded the matter for further proceedings. The district court entered an amended final judgment on January 14, 2011, and Kayode received a 210 month sentence for the remaining two counts.
Kayode then filed a motion under 28 U.S.C. § 2255 attacking his remaining convictions on numerous grounds, including an allegation that he received ineffective assistance of counsel because his attorneys failed to advise him of the deportation consequences of his guilty plea. Kayode submitted an affidavit, asserting that he was under the impression that he had given up his right to trial by the time the district court warned him about the possible deportation consequences of his plea, because he had already signed the plea agreement. Kayode’s affidavit does not state that he would have gone to trial if he had known of the possible deportation consequences of his plea. It does, however, state that “[i]f I had known my indictment would have been dismissed, I would never have pled guilty.”
The government filed a motion for summary judgment, seeking to enforce the appeal waiver in Kayode’s plea agreement. The district court granted the government’s motion for summary judgment and denied Kayode’s § 2255 motion. The district court determined that Kayode’s appeal waiver was knowing and voluntary and was therefore enforceable. The district court noted that the waiver did not bar his ineffective assistance of counsel claim, but instead dismissed that claim after determining that Kayode had not met the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In concluding that Kayode could not establish prejudice, the district court considered: (1) the district court’s admonishments during the plea colloquy regarding deportation; (2) the overwhelming evidence of guilt against Kay-ode; and (3) the ability of the government to seek revocation of his citizenship even if Kayode insisted on proceeding to trial and was acquitted of all counts.
The district court denied Kayode’s certificate of appealability (COA). We subsequently granted a COA only on the issue of whether counsel rendered ineffective assistance by failing to inform Kayode of the deportation consequences associated with his guilty plea. We denied his motion for a COA in all other respects.
II.
Our review “is limited to the issues enumerated in the COA.” United States v. Edwards, 442 F.3d 258, 264 (5th Cir.2006) (citing 28 U.S.C. § 2253(c)(1)). In reviewing a district court’s denial of a § 2255 motion, we review the district court’s factual findings for clear error and its legal *723 conclusions de novo. United States v. Cavitt, 550 F.3d 430, 435 (5th Cir.2008).
III.
In Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the Supreme Court held that counsel’s failure to advise a lawful permanent resident alien of likely deportation implicates the Sixth Amendment right to effective assistance of counsel, as set forth in Strickland, 466 U.S. 668, 104 S.Ct. 2052. Both parties agree that Padilla applies here because Kayode’s conviction became final after Padilla was decided, as his appeal was still pending when the decision was issued.
In order to obtain relief, Kayode must show both (1) that his counsel’s performance was deficient, and (2) prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
A.
To show that his attorney’s performance was deficient, Kayode must show that the attorney’s representation fell below an objective standard of reasonableness and that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed by the Sixth Amendment.” Id.
In Padilla, the Supreme Court determined that the defendant’s counsel was deficient for failing to “advise her client regarding the risk of deportation.” 559 U.S. at 367, 369, 130 S.Ct. 1473. The decision was underscored by the Supreme Court’s recognition of the unique role that deportation can play in criminal punishment. Id. at 373, 130 S.Ct. 1473. As the Supreme Court explained, “informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties.” Id. Given the unique and extreme consequence of deportation, it is incumbent on counsel to warn their clients when a guilty plea could have such an impact. Id. (“The severity of deportation—the equivalent of banishment or exile—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation.” (internal quotation marks and citations omitted)). It has now been more than three years since the Supreme Court issued Padilla, and defense counsel should be well aware of its clear requirement that clients be warned of deportation risks. As the Supreme Court recently noted:
The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.
Missouri v. Frye, - U.S. -, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012).
Here, Kayode averred in a sworn affidavit that his attorneys never warned him prior to his sentencing hearing that he could lose his citizenship if he pleaded guilty to Count 44, and never indicated that Kayode might be deported. Kayode also stated that his attorneys did not review his plea agreement -with him. According to Kayode, he told his attorney that he wanted to go to trial and never agreed to plead guilty. Kayode further stated that he did not read the plea agreement before signing it on September 23, 2008, and that his attorneys did not review it with him. Kayode has thus submitted sufficient evidence to create a genuine is *724 sue of material fact as to whether his counsel’s assistance was constitutionally deficient under the first prong of Strickland. See Padilla, 559 U.S. at 369, 130 S.Ct. 1473 (“[W]hen the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear. Accepting his allegations as true, Padilla has sufficiently alleged constitutional deficiency to satisfy the first prong of Strickland.”).
B.
We now turn to the second prong of Strickland. Nearly twenty-five years before Padilla was decided, the Supreme Court explained in Hill v. Lockhart, that in the plea context, the “prejudice” prong of the Strickland test for ineffective assistance of counsel requires that the defendant show “that there is a reasonable probability that but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
With regard to the prejudice prong, a defendant must “affirmatively prove” prejudice. Strickland, 466 U.S. at 693, 104 S.Ct. 2052. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the Strickland test. A petitioner must establish that but for his counsel’s alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial. Carter v. Collins, 918 F.2d 1198, 1200 (5th Cir.1990).
This assessment, in turn, will depend in part on a prediction of what the outcome of a trial might have been. Hill v. Lockhart, 474 U.S. 52, 56-58 [106 S.Ct. 366, 88 L.Ed.2d 203] (1985). For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.
Armstead v. Scott, 37 F.3d 202, 206 (5th Cir.1994).
The Supreme Court has recognized that in some contexts it is also possible to demonstrate prejudice even absent a showing that a trial would have likely resulted in a different outcome. See, e.g., Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012) (“Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer’s terms would have been less severe than under the judgment and sentence that in fact were imposed”); Missouri v. Frye, — U.S. -, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012) (“To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel’s deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.”); Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (“Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the *725 contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.”).
“Surmounting Strickland’s high bar is never an easy task.” Padilla, 559 U.S. at 372, 130 S.Ct. 1473. In order to do so, Kayode “must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.” Id.[1] “An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding, if the error had no effect on the judgment.” Hill, 474 U.S. at 57, 106 S.Ct. 366 (citing Strickland, 466 U.S. at 691, 104 S.Ct. 2052).
Here, Kayode has not met his burden to show prejudice. In assessing prejudice, we consider the totality of the circumstances, including Kayode’s evidence to support his assertion, his likelihood of success at trial, the risks Kayode would have faced at trial, Kayode’s representations about his desire to retract his plea, his connections to the United States, and the district court’s admonishments.[2] Given the facts here, we agree with the district court that Kaydode has not demonstrated prejudice.
We consider a number of factors when determining whether, under the totality of the circumstances, a defendant has established prejudice under Strickland. Kay-ode argues that he was prejudiced because he would have proceeded to trial if he had known of the likely immigration consequences of his plea.[3] We therefore begin by considering whether the defendant put forth evidence to support his assertion that he would have proceeded to trial if he had known of the likely immigration consequences of his plea. Kayode did not.[4] *726 While Kayode makes a number of sworn statements about his counsel’s actions in his affidavit, he does not aver that he would have gone to trial had he known of the immigration consequences of his plea. Instead, his affidavit states that “[i]f I had known my indictment would have been dismissed, I would never have pled guilty.”[5] As a result, this factor weighs against finding prejudice. ■
Another important factor is whether the defendant has demonstrated that he was likely to succeed at trial. See Armstead, 37 F.3d at 206. Here, Kayode has not done so. The district court found that there was “overwhelming evidence against Kayode.” This finding is entitled to great deference. Urias-Marrufo, 744 F.3d at 369. Specifically, there was evidence that Kayode received stolen mail belonging to more than 250 people, and that he defrauded at least 98 financial institutions. Postal inspectors seized more than 350 credit cards issued in names other than his own, numerous credit reports containing the names, social security numbers, and dates of birth and other personal identification information belonging to a large number of individuals, as well as several hundred letters, about 800 pre-approved credit card applications, bank statements, credit card statements, checkbooks, and other mail meant for third parties. The issue dates for these items went as far back as November 21, 1997 — almost a decade before Kayode became a naturalized citizen. The inspectors also found $63,000 in U.S. currency, an undetermined amount of foreign currency, and various forms of merchandise such as flat-screen television sets and laptop computers that appeared to have been purchased with fraudulent credit cards.
Kayode’s apparent defense to these charges was that the checkbooks, mail, and other materials belonged to someone else and that he was only “a minor participant in the events of which [he had] been accused. So minor, [he was] not sure that [his] role would even have deemed indictment or prison time.” Other than his own sworn testimony, Kayode does not point to any additional evidence that would support his defense. Based on this record, Kayode has not shown that he was likely to succeed at trial, and this factor thus weighs against finding prejudice.
In assessing whether a reasonable defendant would have rationally chosen to go to trial under the circumstances, we also consider the risks faced by a defendant in selecting a trial rather than a plea bargain. Cf. Padilla, 559 U.S. at 372, 130 S.Ct. 1473. By going to trial, Kayode faced convictions on all forty-four counts and a much higher sentence. As the district court explained, if Kayode had
rejected the plea agreement and proceeded to trial, he would have faced substantially more time in prison. He was charged with forty-four counts, and his plea agreement allowed him to plead guilty to three, while the Government agreed to dismiss the other forty-one. To avoid deportation, Kayode would have had to receive an acquittal on all *727 counts occurring prior to and during his application for citizenship. Otherwise, he still would have violated § 1425 by lying in his citizenship application and asserting that he had not knowingly committed any crimes. While acquittal was possible in theory, it was improbable in this case, given the Government’s overwhelming evidence against Kayode.
Given that there were documents found in his home from as far back as 1997, and that the PSR indicated that the scheme to commit these crimes began in 2000, we agree with the district court that Kayode was unlikely to be acquitted of all counts for conduct that occurred prior to his naturalization in 2006. See Sandoval-Moschetto, Nos. EP-11-CV-199-KP, EP-09-CR-89291-KC, 2013 WL 321767, at *11 (W.D.Tex. Jan. 25, 2013) (unpublished) (no prejudice when “the evidence in this case was so overwhelming that Sandoval would have likely been inclined to accept the plea regardless of immigration consequences”); Zapata-Banda v. United States, No. B:10-256, 2011 WL 1113586, at *10 (S.D.Tex. Mar. 7, 2011) (unpublished) (finding that overwhelming evidence and lack of a viable defense indicate, in part, that a petitioner would have pleaded guilty even if advised of immigration consequences). It is thus unlikely that a rational person in Kayode’s position would have proceeded to trial. Accordingly, this factor weighs against a finding of prejudice.
Next, we consider the defendant’s connections to the United States. Significant ties to the United States could make a rational defendant less likely to accept a plea agreement that would result in deportation, and more likely to risk trial, in hopes of avoiding certain “exile” from the United States. Cf. Padilla, 559 U.S. at 370-71, 130 S.Ct. 1473 (“When attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all.”); United States v. Akinsade, 686 F.3d 248, 255-56 (4th Cir.2012) (“We have found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation.”). Here, the PSR indicates that three of Kayode’s five siblings live in the United States, and that Kayode has a young child residing in Houston, Texas. Kayode has consistently resided in Houston, Texas, since his entry into the United States in 1982. While these facts, standing alone, do not establish prejudice, they do indicate that it would be more reasonable for someone in Kayode’s circumstances to risk going to trial rather than face deportation. This factor thus weighs in favor of finding prejudice.
Another factor in our analysis is whether the defendant previously moved to withdraw his guilty plea. See Gonzalez v. United States, 722 F.3d 118, 132-33 (2d Cir.2013).[6] Prior to sentencing, Kayode *728 moved to withdraw his plea, asserting concern regarding his appeal waiver and alleging he had no recollection of the proceedings or his discussions with counsel. Although Kayode’s motion to withdraw his guilty plea was not based on counsel’s deficiencies under Padilla, the fact that he sought to withdraw his plea and asserted his interest to go to trial, proclaiming innocence, is nonetheless relevant to the prejudice analysis.[7] Gonzalez, 722 F.3d at 133. As the Second Circuit explained, although the motion to withdraw his guilty plea, had nothing to do with counsel’s performance, the motion is still relevant to Kayode’s ability to demonstrate that a rational defendant in his circumstances would have rejected the plea agreement and proceeded to trial, and thus should be a factor in the court’s prejudice inquiry.
In the present ease, the stated basis of [the petitioner’s] request to withdraw his plea was not related to any performance or lack thereof by [counsel].... [Accordingly, t]he fact that an attempt was made to withdraw the ^guilty plea and go to trial may not be dispositive on the issue of IAC prejudice; however, it is a factor that must be considered by the court in assessing whether there is a reasonable probability that but for substandard performance by counsel, the defendant would have chosen to eschew the plea and go to trial. Given that' [the petitioner’s] attempt to withdraw his plea and go to trial does not appear to have been considered by the district court in assessing the reasonable probability that he would have chosen to go to trial but for [counsel’s] allegedly substandard performance, we decline to endorse the district court’s conclusion that [the petitioner] failed to make the requisite showing of prejudice.
Id. at 132-33 (emphasis added). Just as in Gonzalez, here Kayode unsuccessfully moved to withdraw his guilty plea.
Finally, we also consider whether the defendant received any judicial admonishments regarding the possible deportation consequences of a plea when evaluating prejudice. As we have previously noted, a district court’s admonishments are “irrelevant” in determining whether error has occurred under the first Strickland prong:
Padilla, which announced a new, clearly defined, and relatively limited duty for criminal defense attorneys, concerns a narrow factual inquiry compared, to most Strickland claims: whether the defendant was informed by defendant’s counsel of certain immigration consequences, and whether prejudice resulted therefrom. It is counsel’s duty, not the court’s, to warn of certain immigration consequences, and counsel’s failure cannot be saved by a plea colloquy.
Urias-Marrufo, 744 F.3d at 369. Warnings from a judge during a plea colloquy are not a substitute for effective assistance of counsel, and therefore have no bearing on the first Strickland prong. However, while judicial admonishments are not a substitute for effective assistance of counsel, they are relevant under the second *729 Strickland prong in determining whether a defendant was prejudiced by counsel’s error.
The admonishments here weigh against finding prejudice.[8] Before accepting his plea, the district court informed Kayode “that there is a possibility, if convicted or found guilty of this count, there might be a loss of citizenship that was given to you through naturalization.” The district court also asked Kayode if he understood that if his citizenship was revoked that “conviction may lead to your deportation or exclusion from the country” before accepting his plea. Kayode responded, ‘Tes, sir.” The district court also noted that “during Kayode’s rearraignment, and prior to his plea of guilty, the Court asked him three times if he understood that he could face deportation as a result of pleading guilty, and Kayode stated on the record each time that he understood that consequence.” Such “[s]olemn declarations in open court carry a strong presumption of verity.” Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). This factor thus weighs against finding prejudice. We need not decide today whether Kayode’s affirmative responses to these admonishments, standing alone, would be sufficient to defeat the prejudice prong under Strickland,[9] Under the totality of the circumstances present here, Kayode has not affirmatively demonstrated prejudice, and has thus failed to surmount Strickland’s high bar. Padilla, 559 U.S. at 372, 130 S.Ct. 1473.
IV.
Kayode’s claim fails as he has not shown that he was prejudiced by the fact that his counsel did not warn him of the likely *730 deportation consequences of his plea agreement. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052 (“Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that rendered the result unreliable.”). We therefore AFFIRM the district court’s grant of summary judgment.

. In Padilla the Supreme Court did not reach the question of whether the defendant had demonstrated prejudice and instead remanded for the prejudice determination. Id. at 374, 130 S.Ct. 1473.

. We note that the factors we consider here are not the only factors that may be considered under the prejudice analysis. While we discuss the factors most relevant to this case, this list of factors is not intended to be exhaustive.

. As discussed above, the Supreme Court has recognized that in certain circumstances it is possible to show prejudice even absent a showing that a trial would have likely resulted in a different outcome. However, Kayode does not raise any such arguments here. As a result, we limit our analysis to whether he was prejudiced by not proceeding to trial.

. The dissenting opinion contends that there is a factual dispute as to whether Kayode would have proceeded to trial had he known of the likely immigration consequences of his plea. This is baffling. First, Kayode never briefed the evidentiary-hearing issue, either in his motion for COA or in his brief on appeal. Second, and more importantly, the dissenting opinion does not identify what could possibly be gleaned from an evidentiary hearing. Kay-ode's affidavit, on its face, never states that Kayode would have gone to trial had his attorney informed him of the likely immigration consequences of his guilty plea. The affidavit does not specify any different course of action that Kayode would have taken had he known that he might lose his United States citizenship and be deported. Instead, the affidavit asserts that Kayode was a minor participant in his crimes, avers that his attorney pressured him through incorrect legal advice to sign the plea agreement without reading it, and avers that Kayode first learned of the possible immigration consequences from the district court at his rearraignment hearing. While Kayode averred in his affidavit that he would not have pleaded guilty had he "known [his] indictment would have been dismissed,” and his attorney did not quickly act on his instruction to file a motion to withdraw the plea, Kayode never averred that he would have proceeded to trial had he known of the likely immigration consequences of pleading guilty. As a matter of procedure, one cannot create a fact issue by stating new facts for the first time in an appellate brief. Smith v. Olin Chem. Corp., 555 F.2d 1283, 1285 (5th Cir.1977) (en banc). This glaring omission in *726 Kayode’s affidavit alone would likely justify affirmance. Cf. Armstead, 37 F.3d at 206 (mere allegation that defendant would have insisted on a trial is by itself insufficient). In any event, the undisputed facts conclusively establish that Kayode is not entitled to relief.

. In contrast, the defendant in United States v. Urias-Marrufo, submitted an affidavit stating that "if she had known for sure that she would be deported as a result, she would not have entered the guilty plea.” 744 F.3d 361, 363 (5th Cir.2014). There, we determined that the defendant had sufficiently presented a Padilla claim in a motion to withdraw a plea, and remanded to the district court to consider her claim. Id. at 369, 130 S.Ct. 1473.

. In Gonzalez, the petitioner amended his initial habeas petition after Padilla was issued, asserting that his counsel failed to provide effective assistance by neglecting to advise him of the immigration consequences of his plea. Without consideration of the fact that Gonzalez had unsuccessfully sought to withdraw his plea, the district court considered Gonzalez’s Padilla claim (in addition to other ineffective-assistance-of-counsel claims) and found that Gonzalez could not establish prejudice because of the overwhelming evidence of guilt against him. After the district court denied Gonzalez's habeas petition, and during the pendency of his appeal to the Second Circuit, the Supreme Court issued its decision in Chaidez, holding that Padilla does not apply retroactively on collateral appeal. Chaidez v. United States, - U.S. -, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013). Thus, the *728 Second Circuit found that it could not consider Gonzalez’s Padilla claim. The Second Circuit, however, analyzed the district court's reasoning under Strickland and concluded that it "did not endorse” the district court's prejudice analysis because it failed to consider the relevant fact that Gonzalez had sought to withdraw his guilty plea. See Gonzalez, 122 F.3d at 132-33.

. Padilla had not yet been decided at the time that Kayode filed his motion to withdraw his plea, and Kayode did not argue in his motion that his counsel had been ineffective in assisting him with the plea.

. The dissent characterizes the admonishments in this case as merely "perfunctory,” but the record demonstrates that the district court did far more than read from a script. Rather, the experienced district court actively ensured that Kayode received the information that he needed to enter an informed guilty plea. Not only did the district court, on its own initiative, inquire whether Kayode was a naturalized citizen and choose to make the loss-of-citizenship admonishments over counsel’s assertion that they were unnecessary, but the district court also later stopped the hearing when Kayode testified that he did not intend to commit the acts described in the PSR. The district court then allowed Kayode to meet with his attorney before resuming the rearraignment hearing and clarified, on the record, that Kayode and his attorney had time to meet and discuss the issue before the hearing resumed. The district court’s choice, on its own initiative, to include the loss-of-citizenship admonishments, the district court’s active role during the rearraignment hearing, and Kayode’s opportunity to confer with his attorney after the loss-of-citizenship admonishments were made, belie any assertion that the admonishments were merely "perfunctory." Thus, we properly accord weight to the admonishments in this case.

. Given the fact-intensive nature of the prejudice analysis, courts have varied in the significance that they attribute to judicial admonishments when assessing this second prong of the Strickland test. Compare DeVille v. Whitley, 21 F.3d 654, 660 (5th Cir.1994) ("court’s admonishment cured any deficiency in counsel's performance and made the error harmless” when the court, but not counsel, admonished the defendant that he was waiving his right to a suppression hearing); Abraham v. United States, 699 F.3d 1050, 1053 (8th Cir.2012) (“[A] defendant cannot satisfy Strickland 's prejudice prong when 'the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the defendant] confirmed that he had read the PSR, discussed it with his counsel, and understood it; and [the defendant] never moved to withdraw his guilty plea.' ”) with Bonvillain v. Blackburn, 780 F.2d 1248, 1253 (5th Cir.1986) (counsel’s failure harmless when defendant received judicial admonishments and there was also evidence that defendant was unlikely to succeed at trial); Sandoval-Moschetto, 2013 WL 321767, at *4 (treating judicial admonishments as one factor in prejudice analysis). The approach we adopt today allows courts to have the continued freedom to consider all relevant factors in assessing prejudice.