**Opinion filed October 27, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00080-CR

_____

## EX PARTE ANA MAR LANDINI

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10150-D**

## MEMORANDUM OPINION

Ana Mar Landini, pro se, appeals from the denial of her application for writ of habeas corpus.[1]  We affirm.

Landini seeks habeas corpus relief from a 2012 order of deferred adjudication that was entered after she pleaded no contest to the first-degree felony offense of possession of methamphetamine with the intent to deliver.  Pursuant to the terms of the plea agreement, the trial court deferred the adjudication of Landini's guilt, placed

---

[1]We refer to the application as Landini's, but we note that the application was filed by Joshua Cisneros on behalf of and at the request of Landini.  *See* TEX. CODE CRIM. PROC. ANN. arts. 11.12, .13 (West 2015).  Cisneros lived with Landini and took responsibility for the drugs that were found in Landini's house.

her on community supervision for a term of seven years, and imposed a fine of $1,000. After deportation proceedings were initiated against her, Landini sought habeas corpus relief pursuant to Article 11.072. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West 2015). Landini asserted in her application that she received ineffective assistance of counsel with respect to the advice of her counsel regarding deportation and that she would have gone to trial instead of pleading no contest if her attorney had properly advised her of the consequences of her plea.

## I. *Issue Presented*

Landini presents one issue on appeal. She asserts that she received ineffective assistance of counsel because trial counsel misadvised her of the deportation consequences of her plea. Landini relies upon *Padilla v. Kentucky* as support for her contention. *See Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the Supreme Court held that "counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374. The Court determined that trial counsel's assistance may be rendered ineffective based upon counsel's advice, or lack thereof, concerning the deportation consequences of a guilty plea; the Court stated that, when such consequences are "truly clear," counsel's duty to advise the defendant regarding those consequences is "equally clear." *Id.* at 369. The Court emphasized that the severity of deportation "underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* at 373–74. Under federal immigration law, a noncitizen convicted of the offense to which Landini pleaded no contest "is deportable." 8 U.S.C. § 1227(a)(2)(B)(i); *see also Padilla*, 559 U.S. at 368 (observing that "Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which . . . specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses"). Additionally, as imposed in this case, deferred adjudication is considered to be a conviction under

federal immigration law and, therefore, does not prevent Landini from being deported. *See* 8 U.S.C. § 1101(a)(48)(A) (providing that the term "conviction" includes the situation in which an alien pleads guilty or no contest and the trial court withholds the adjudication of guilt but imposes some form of punishment, penalty, or restraint on the alien's liberty); *State v. Guerrero*, 400 S.W.3d 576, 588 & n.52 (Tex. Crim. App. 2013).

## II. *Standard of Review*

When an application for writ of habeas corpus is filed pursuant to Article 11.072, the trial court is the sole factfinder. *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016) (citing *Guerrero*, 400 S.W.3d at 583). An appellate court must afford almost total deference to the trial court's factual findings when those findings are supported by the record. *Id.* To demonstrate that she is entitled to postconviction relief on the basis of ineffective assistance of counsel, an applicant must prove by a preponderance of the evidence both (1) that counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness, and (2) that the applicant was prejudiced as a result of counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984); *Torres*, 483 S.W.3d at 43. In the context of an Article 11.072 challenge to a guilty plea, the focus of the second prong of *Strickland*—the prejudice inquiry—is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process" and whether the applicant has shown that, but for trial counsel's errors, the applicant would not have pleaded guilty and would have insisted on going to trial. *Torres*, 483 S.W.3d at 43 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Under the prejudice inquiry in a *Padilla* situation, the applicant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 48 (quoting *Padilla*, 559 U.S. at 372). The Texas Court of Criminal Appeals noted in *Torres* that various factors have been considered by courts when addressing the prejudice

inquiry in a *Padilla* situation, including the evidence supporting an applicant's assertions, the likelihood of her success at trial, the risks the applicant would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments. *Id.* (citing *United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014)).

### III. *Landini's Application and Trial Court's Order*

Landini asserted in her application that her attorney "misinformed" her that "deportation was only a possibility" when, in fact, immigration law provided that she would clearly be subject to deportation. Landini also asserted that she would have gone to trial if she had been properly advised of the consequences of her plea. The State did not file an answer to Landini's application. The trial court did not request any affidavits or conduct a hearing on the matter. *See* CRIM. PROC. art. 11.072, § 6(b). Instead, the trial court simply entered an order that denied the habeas corpus relief sought by Landini. *Id.* § 7(a). In its order, the trial court made the following findings:

> The Court, after reviewing the transcript of the plea hearing proceedings and the Court's file, finds that the Applicant was fully advised of the consequences of her plea, including an admonishment advising her that entering into the plea would result in her deportation, claimed to be represented by an immigration attorney (separate from her criminal trial counsel) and elected to forgo a hearing on her pending Motion to Suppress in exchange for a plea agreement.

The reporter's record from the plea hearing that the trial court referenced in its order contains the following colloquy between Landini, her attorney, and the trial court, which occurred immediately after Landini informed the trial court that she was a citizen of Mexico:

> THE COURT: All right. Ma'am, you have the right to have this proceeding suspended until the Embassy can be notified and you have the opportunity to consult with them. Do you understand that right?
>
> THE DEFENDANT: Yes, sir.

4

THE COURT: Do you wish to suspend this proceeding while you have that opportunity?

THE DEFENDANT: No, sir.

THE COURT: All right. Do you understand, ma'am, that this proceeding, regardless of the Court's determination -- in fact, for this type of cause I am supposed to instruct you that it will result in your deportation. Now, quite honestly, ma'am, that's my instructions that I am required to give. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Have you talked with your attorney about the likelihood of deportation as a result of this proceeding?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

[DEFENSE COUNSEL]: And for the Court's information, she also has an immigration attorney. She's been going through the immigration process, and it's her understanding, based upon that information, that once this deferred is completed, that she can then take the test to become a citizen. Everything else is done. She's lived in this country since she was a baby.

THE COURT: And, [Defense Counsel], the law requires that I instruct her and she must understand and acknowledge that this proceeding, whether it's a deferred plea or a finding of guilt, will result in her deportation. You understand that?

[DEFENSE COUNSEL]: Yes, Your Honor, and she understands as well. We went over the documentation and the paperwork.

THE COURT: All right. So, Ms. Landini, do you have any questions about or concerns regarding the Court's information that was just given to you? Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Do you still wish to proceed with this plea?

THE DEFENDANT: Yes, sir.

5

## IV. *Analysis*

With respect to the first prong of the *Strickland/Padilla* analysis, we cannot determine from the record before us whether Landini's counsel correctly advised Landini about the immigration consequences of her plea. Nor does it appear that the trial court made findings in that regard in response to Landini's application for writ of habeas corpus. Consequently, we will address only the second prong in our analysis.

The record indicates that approximately 325 grams of methamphetamine, 52 grams of cocaine, and 678 grams of marihuana—along with firearms, scales, and $5,757 in U.S. currency—were found in Landini's home and that she was indicted on multiple counts. Pursuant to the plea bargain, the State proceeded on only one of the counts against Landini. The record also indicates that at least one of the people in Landini's house had ties to the Mexican Mafia and that law enforcement had received information that Landini's house was a Mexican Mafia stash house.

In light of the risk of going to trial on the multiple counts against her; the relative benefit of the plea bargain, which resulted in Landini being placed on deferred adjudication community supervision rather than facing the possibility of a lengthy term of imprisonment for a first-degree felony; the documents attached to Landini's application; the discussion from the plea hearing, in which trial counsel stated that she had explained the deportation consequences; the unequivocal admonishments given to Landini by the trial court before accepting her plea; and Landini's acknowledgement in open court that she understood that she would be deported based upon her plea, we conclude that the trial court did not err when it denied the relief sought by Landini in her Article 11.072 application for writ of habeas corpus. Although trial counsel's statement regarding Landini's understanding with respect to taking a test to become a citizen is concerning, the trial court made certain that Landini understood—and that her trial counsel had explained

to her—that deportation was not just a possibility; it was a certainty. Under the circumstances in this case, Landini did not establish the prejudice prong of her claim of ineffective assistance of counsel. We overrule Landini's sole issue on appeal.

## V. *This Court's Ruling*

We cannot conclude that the trial court erred when it denied Landini's application for writ of habeas corpus. Accordingly, we affirm the order of the trial court.

MIKE WILLSON

JUSTICE

October 27, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7