**Opinion issued April 2, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00882-CR

_____

**EDGAR MUNOZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1556775**

## MEMORANDUM OPINION

Appellant, Edgar Munoz, pleaded guilty, without an agreed punishment

recommendation from the State, to the offense of possession of a controlled

substance, namely, marihuana, in an amount in excess of 2000 pounds.[1] After a pre-sentence investigation ("PSI") and hearing, the trial court assessed appellant's punishment at confinement for 25 years and a fine of $5,000. On appeal, appellant presents four issues. In his first issue, appellant contends that his trial counsel's failure to provide accurate immigration advice, required under *Padilla v. Kentucky*, 559 U.S. 356 (2010), constituted ineffective assistance of counsel and rendered his guilty plea involuntary. In his second, third, and fourth issues, appellant contends that the trial court abused its discretion in denying his motion to withdraw his plea and in denying his motions for new trial.

We reverse and remand.

## Background

In 2017, agents of the United States Customs and Border Patrol, Laredo Field Office, operating at the Columbia Bridge Port of Entry, discovered a Freightliner tractor-trailer ("truck") transporting a large amount of marihuana hidden inside five-gallon pails marked as glazier's putty. After the discovery, agents of the United States Immigration and Customs Enforcement, Homeland Security Investigations Division ("HSI"), notified the Houston Police Department ("HPD") that the truck was bound for Houston. HSI special agents concealed themselves inside the cab of the truck. Other HSI agents then conducted rolling surveillance of the truck as it

---

[1] *See* TEX. HEALTH & SAFETY CODE. §§ 481.002(5), 481.121.

2

traveled from the border to its destination at 1901 South Houston Road, in Pasadena, Texas. When the truck entered Harris County, HPD officers joined in the surveillance. Utilizing air support, agents and officers watched as the truck arrived at its destination and individuals began unloading the pails into a commercial building. HPD officers then went into the building, where they detained appellant. Appellant claimed to be the owner of the business, and he executed a written consent to search the premises. Appellant admitted knowing that the truck was delivering marihuana. He later claimed that a person named "Ruben" actually owned the business and paid him $1,400 per month to pose as the owner. Officers seized the marihuana and submitted it to the Houston Forensic Science Center, where analysts confirmed that the pails contained 5,349.34 pounds of marihuana.

Appellant was charged with the first-degree-felony offense of possession of marihuana in an amount in excess of 2000 pounds. On July 11, 2018, he pleaded guilty without an agreed punishment recommendation from the State. The record reflects that appellant waived his right to have a court reporter transcribe the plea hearing. The record contains plea papers, which are signed by appellant, his trial counsel, and the trial court. The plea papers include an admonishment stating that, "[i]f you are not a citizen of the United States of America, a plea of guilty . . . for the offense with which you are charged in this case may result in your deportation."

3

Appellant, who is a "legal permanent resident" of the United States,[2] initialed this paragraph, along with statements that he understood the admonishments and the consequences of his plea.

In addition, appellant executed separate Immigration Admonishments ("Admonishments"). In the Admonishments, he initialed paragraphs stating that he is not a United States citizen and stating: "I understand that a conviction of certain [sic] will trigger my removal from this country and/or result in my inability to re-enter this country should I choose to leave. These crimes include: . . . Crimes involving controlled substance. . . ." Appellant also initialed paragraphs stating:

(6) I understand that a sentence of community supervision (probation or deferred adjudication) is considered a 'conviction' under federal law and could still result in my removal from inadmissibility [sic] to this country.

(7) My attorney has explained the admonitions to me and advised me regarding the consequences of my plea as they relate to immigration consequences. My attorney has made no representations that my plea of guilty will NOT cause any change in immigration status.

(8) My attorney has explained the evidence the State will present against me. Understanding the immigration consequences associated with my plea and the risk of pursuing my case to trial, I am choosing to plead guilty to the offense of [left blank].

(9) I am entering my plea of guilty regardless of any removal or re-entry consequences that I may encounter as a result of my plea.

---

[2] "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20).

(10)   I have freely, knowingly, and voluntary executed this statement.

Appellant's counsel signed the Admonishments, attesting that he had fully advised appellant about the immigration consequences of his plea.  The trial court also signed the Admonishments, after the following paragraph:

> The Defendant came before me and prior to accepting a plea of guilty. I have admonished the Defendant of the immigration consequences associated with his/her plea. I find that the Defendant[']s attorney has advised the defendant regarding the immigration consequences associated with his/her plea.  I further find that the Defendant[] is aware of and understands the immigration consequences associated with his/her plea and that his/her plea is knowingly voluntarily made.

Six weeks later, on August 21, 2018, appellant filed a motion to withdraw his plea, claiming actual innocence.  The trial court denied appellant's motion.

On September 16, 2018, appellant's trial counsel, William Cheadle, filed on appellant's behalf a motion to "Reconsider Motion to Withdraw Guilty Plea Due to [Immigration] Consequences," in which counsel asserted:

> [Appellant] stands charged with Possession of Marijuana over 2000 lbs. A Guilty plea was entered, and [appellant] was scheduled for a [PSI]. During the period between the guilty plea and the PSI, federal immigration law has continued to shift toward deportation for all drug offenses.
>
> . . . At the time of the admission of guilt, [appellant] and Counsel understood the possibility of probation to be a Deferred Adjudication Probation which [would], at the time, be considered a non-conviction, and thus not a deportable offense for [appellant], who is a legal permanent resident.
>
> . . .  Since that time, it has become apparent that ANY drug charges are meriting deportation and removal proceedings.  When faced with this

5

prospect, Counsel and [appellant] filed a Motion to withdraw [guilty] plea, which was denied on August 24, 201[8].

. . . .

. . . [Appellant] has a very forceful [reason] for the request [to withdraw his plea], namely deportation from a county he loves, and of which he is a legal permanent resident. He requested the withdrawal of his plea, as soon as the intentions of the administration and ICE became apparent and undeniable. There has been no plea agreement reached and sentence has not been pronounced. In addition, [appellant] is asserting a claim of actual innocence, and is requesting a fair trial [by] jury, as is his right under the law.

At the PSI hearing, the trial court took up appellant's motion to reconsider his motion to withdraw his plea. Appellant's trial counsel, Cheadle, argued:

> [W]e became aware of the fact that with this type of plea that there are immigration consequences and that he [appellant] could be deported for this. I am not an immigration attorney. We did speak with one, and we were advised of some of the possible consequences. After speaking with my client after that first hearing, he did want to withdraw his plea. He did initially plea[d] guilty and for—to do a PSI in front of this Court. Since then we've—we have changed our minds based on the fact that it will have consequences, severe consequences for my client, that he might get deported. . . . Your Honor, we are asking this Court to reconsider our request to withdraw based on the serious nature of the consequences and that— that the consequences became—came to light for my defendant after his initial plea request.

The State argued that the plea papers reflected that appellant had received adequate admonishments at the time that he entered his plea.

On September 17, 2018, the trial court denied the motion to reconsider the motion to withdraw the plea. The trial court signed a judgment finding appellant guilty as charged in the indictment and sentencing him to confinement for 25 years.

6

On October 8, 2018, appellant, represented by new counsel, filed a motion for new trial, alleging that Cheadle had failed to provide appellant with accurate immigration advice, which constituted ineffective assistance of counsel and rendered appellant's guilty plea involuntary. Appellant asserted that Cheadle, knowing that appellant was a legal permanent resident of the United States, had incorrectly advised him to plead guilty to the charged offense of possession of over 2000 pounds of marihuana, assuring him that "a sentence of deferred adjudication would prevent him from being deported." Based on Cheadle's advice, appellant waived trial and pleaded guilty. After entering his plea, appellant learned that his guilty plea rendered him subject to mandatory deportation. Appellant asserted that, had he known that deportation was a mandatory consequence of his plea, he would not have pleaded guilty and would have instead insisted on going to trial.

As evidence to substantiate his preference, appellant pointed to his motion to withdraw his plea, which Cheadle filed shortly after appellant entered his plea. In the motion, Cheadle admitted that he had incorrectly advised appellant about the immigration consequences of pleading guilty and asserted that appellant had therefore involuntarily entered his plea.

On November 1, 2018, appellant filed an amended motion for new trial, which was substantively identical to his original motion, except that he presented his

7

affidavit and that of Cheadle's paralegal, Simone Swann.[3]  In his affidavit, appellant

testified, in pertinent part:

> I told [Cheadle] that I wanted to have a jury trial and did not want to plead guilty.  I continued to ask [Cheadle] what evidence the State had against me.  [Cheadle] would not answer my questions.  The majority of conversations between [Cheadle] and I were about his vehicles he continued to have me repair for him. . . .  I would occasionally remind [Cheadle] that he is representing me in a criminal case and that we needed to discuss how he would present my defense in trial.  [Cheadle] would say things like "keep the faith" or "I will make it happen."  Nothing legal, no strategy and just ignored my requests for a jury trial.  [Cheadle] decided that instead of going to trial I should take a plea agreement.  He stated this is the best chance for me to get probation.  [Cheadle] told me that if I plead guilty to a PSI that the Judge would give me a deferred probation and that this would not have immigration consequences for me.  I would have chosen to go to trial as I originally kept insisting on doing, if I would have been told that pleading guilty would have immigration consequences and that I would be subjected to mandatory deportation as a result.

In her affidavit, Cheadle's paralegal, Swann, testified:

> I worked as a paralegal for William Cheadle from June 2017 until February 2018.  During my employment with The Cheadle Law Firm, [appellant] became a client of [Cheadle] because he had a Possession of Marijuana Case that was pending in Harris County, Texas.  It came to my attention shortly after [appellant] became a client of The Cheadle Law Firm that he was a permanent resident of the United States and not a United States Citizen.  I brought this to the attention of [Cheadle]. [Appellant's] girlfriend, Gloria did call the office at one point and spoke to me about whether or not I thought that [appellant] should try to reschedule his citizenship. I gave [Cheadle] the information and let him know that Gloria and [appellant] were wanting his advice about

---

[3]  At a hearing on appellant's original and amended motions for new trial, the trial court ruled that appellant's amended motion was not timely filed. Notwithstanding, appellant offered the affidavits into evidence for purposes of the hearing.  After the State affirmatively stated that it did not object, the trial court admitted the affidavits.

8

whether or not to reschedule the immigration meeting or to wait. [Cheadle] stated that it did not matter, that [appellant] should reschedule his meeting with immigration and get his citizenship completed if that is what he wanted to do. I again reiterated to [Cheadle] that this situation, even while pending, has significant potential immigration consequences for his client [appellant] and that he needs to be able to advise him properly on this issue. I also knew and conveyed to [Cheadle] at that time that a deferred probation in a Possession of Marijuana case more than 0-2 oz would in fact trigger the deportation process for [appellant]. . . .

I asked [Cheadle] what his plan is with this case. He stated to me "I am going to get [appellant] a deferred probation." I then told him that even a deferred probation would have immigration consequences since [appellant] is not a United States Citizen. I told [Cheadle] that he would have to tell [appellant] that he would be deported. [Cheadle's] response to me was "that [appellant's] immigration issues were not his problem.". . . It was clear that [Cheadle] had no idea about the immigration consequences facing [appellant] and admittedly had not heard of or even read Padilla v. Kentucky. I know he did not think this was important because he told me the same.

. . . [S]hortly after I had stopped working for the Cheadle law firm[,] [appellant] called wondering where [Cheadle] was and why he had not arrived at Court. . . . [Appellant] then stated to me that he wanted to go to trial and had been discussing his desire for a trial with [Cheadle].

The trial court concluded that the written admonishments were sufficient to apprise appellant of the consequences of his plea. It noted that Cheadle had signed them, stating that he had admonished appellant of the immigration consequences he may be subject to, and that the trial court had also signed that it had similarly admonished appellant. The trial court denied the original motion for new trial.

**Ineffective Assistance of Counsel**

In his first issue, appellant argues that his trial counsel's failure to provide accurate immigration advice, required under *Padilla v. Kentucky*, 559 U.S. 356 (2010), constituted ineffective assistance of counsel and rendered his guilty plea involuntary. In his second issue, appellant argues that the trial court erred in denying his motion to withdraw his guilty plea because it was involuntary. In his third issue, appellant asserts that the trial court erred in denying his motion for new trial. In his fourth issue, appellant asserts that the trial court erred in denying his amended motion for new trial because it was timely filed. We address appellant's first and third issues together.

## A.    Standard of Review and Applicable Law

When, as here, an appellant presents a claim of ineffective assistance of counsel in a motion for new trial and receives a hearing, we analyze the ineffective-assistance issue on appeal as a challenge to the denial of the motion for new trial and view the relevant legal standards through the prism of abuse of discretion. *Robinson v. State*, 514 S.W.3d 816, 823 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and determine whether the trial court's application of the standard lies outside the zone of reasonable disagreement. *Biagas v. State*, 177 S.W.3d 161, 172 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). As a reviewing court, we afford "almost total

deference" to a trial court's determination of historical facts and its application of the law to fact questions, the resolution of which turns on an evaluation of credibility and demeanor. *See Guzman v.* State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same deferential review to the trial court's determination of historical facts based solely on affidavits, regardless of whether the affidavits are controverted. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). In the absence of express findings, as here, we presume that the trial court made all findings in favor of the prevailing party. *Id.*

"A defendant has an absolute right to a jury trial." *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009). Thus, a decision to plead guilty is valid only if the defendant proceeds knowingly and voluntarily. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). Before deciding whether to plead guilty, a defendant is entitled to effective assistance of competent counsel. *Padilla*, 559 U.S. at 364; *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). To demonstrate that a plea was involuntary based on ineffective assistance of counsel, the defendant must demonstrate by a preponderance of the evidence (1) that counsel's performance was deficient and (2) that the defendant was prejudiced as a result of counsel's errors. *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018); *see Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

11

### 1. *Deficient Performance*

Under the first prong, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. In *Padilla*, the United States Supreme Court held that advice on the unique consequence of removal is within the scope of representation required by the Sixth Amendment right to counsel. 559 U.S. at 369. If the law is "not succinct and straightforward," a criminal defense attorney "need do no more than advise a non[-]citizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. However, when the deportation consequences of a guilty plea are "succinct, clear, and specific," counsel's duty to correctly advise of those consequences is "equally clear." *Id*. In such cases, it is not sufficient to generally advise a defendant that he "might" be deported. *Ex parte Torres*, 483 S.W.3d 35, 45 (Tex. Crim. App. 2016). Rather, even if counsel believes that the actual probability of removal is uncertain, his constitutional duty is to inform his client that his deportation is a "virtual legal certainty." *Id*. A failure to affirmatively provide a non-citizen defendant "accurate legal advice about the 'truly clear' consequences of a plea of guilty to an offense that, as a matter of law, renders him 'subject to automatic deportation'" will render counsel's performance constitutionally deficient. *Ex parte Aguilera*, 540 S.W.3d

239, 247 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Padilla*, 559 U.S. at 360, 369).

### 2. *Prejudice*

Under the second prong, in the context of a defendant's claim that his counsel's ineffective assistance rendered his plea involuntary, the defendant must demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (holding that "*Hill* test" governs *Padilla* analysis); *Miller*, 548 S.W.3d at 499; *Torres*, 483 S.W.3d at 47. That is, the defendant's burden is to demonstrate a reasonable probability that the deficient performance caused him to waive a judicial proceeding to which he otherwise had a right. *Lee*, 137 S. Ct. at 1965; *Miller*, 548 S.W.3d at 499. "The focus then is on the defendant's decision making." *Miller*, 548 S.W.3d at 499. "[A]s *Padilla* recognized, an alien defendant might rationally be more concerned with removal than with a term of imprisonment." *Torres*, 483 S.W.3d at 48 (internal quotations omitted).

In determining whether the defendant met his burden to establish prejudice, we consider the circumstances surrounding his plea. We first consider whether the defendant presented evidence to support his assertion that he would have proceeded to trial had he known the immigration consequences of his plea. *Id.* at 48–49

13

("[W]here the totality of the circumstances indicate that a defendant has placed a particular emphasis on the immigration consequences of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice."); *see also United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014). To substantiate the defendant's expressed preferences, we look to evidence contemporaneous with the entry of his plea, and not simply to post hoc assertions. *Lee*, 137 S. Ct. at 1967.

Next, as part of the *Hill* standard, a defendant generally must show that a decision to reject the plea bargain would have been rational under the circumstances. *Torres*, 483 S.W.3d at 48. In assessing whether a reasonable defendant would have rationally chosen to go to trial under the circumstances, courts have considered the risks the defendant faced in selecting a trial rather than a plea bargain. *See id.*; *see also Kayode*, 777 F.3d at 725. Overwhelming evidence against the defendant, making it unlikely that a rational person in his position would have proceeded to trial, weighs against finding prejudice. *Kayode*, 777 F.3d at 726–27. Courts have also considered whether the defendant moved to withdraw his plea. *Id.* at 727–28. A defendant's attempt to withdraw his plea weighs in favor of finding prejudice. *Id.* at 728.

Another factor in the analysis is the defendant's connection to the United States. *See Kayode*, 777 F.3d at 725; *Ex parte Duque*, 540 S.W.3d 136, 150 (Tex.

14

App.—Houston [1st Dist.] 2017, pet. struck); *see also United States v. Akinsade*, 686 F.3d 248, 255–56 (4th Cir. 2012) ("We have . . . found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation.").

Courts have also considered the judicial admonishments. *Kayode*, 777 F.3d at 728. Although judicial admonishments are not a substitute for effective assistance of counsel, they are relevant under the second prong in determining whether a defendant was actually prejudiced by counsel's error. *Id.* at 728–29.

Importantly, the defendant need not show that the likely outcome of the jury trial he waived would have been more favorable. *Miller*, 548 S.W.3d at 500. In the context of deficient performance leading to a guilty plea, the deficiency leads not to a trial proceeding of questionable reliability, but to the forfeiture of the proceeding itself. *See Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005). Thus,

> [w]hen a defendant alleges that his counsel's deficient performance led him to [plead guilty] rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain. That is because, while we ordinarily apply a strong presumption of reliability to judicial proceedings, we cannot accord any such presumption to judicial proceedings that never took place.

*Lee*, 137 S. Ct. at 1965 (internal quotations omitted).

15

These precepts are illustrated in *Lee*. *Id*. at 1963–69. There, defendant Lee, a lawful permanent resident of the United States, was indicted on a drug offense. *Id*. at 1963. Believing that Lee's defense was weak and that going to trial was risky, Lee's counsel advised him to plead guilty. *Id*. Lee informed his attorney of his noncitizen status and repeatedly asked his attorney whether he would face deportation. *Id*. Lee's counsel assured him that he would not be deported. *Id*. When Lee entered his plea, the trial court admonished him that he could be deported; however, Lee's counsel assured him that such general admonishment did not apply to him. *Id*. at 1968. After pleading guilty, Lee learned that he was in fact subject to mandatory deportation. *Id*.

Lee filed a motion to vacate his conviction and sentence, arguing that his attorney had provided constitutionally ineffective assistance. *Id*. At a hearing, Lee and his plea-stage counsel testified that deportation was the determinative issue in Lee's decision whether plead guilty or go to trial. *Id*. And, counsel testified that "if he had known Lee would be deported upon pleading guilty, he would have advised him to go to trial." *Id*. The district court, applying *Strickland*, denied relief. *Id*. at 1964.

On appeal to the Sixth Circuit in *Lee*, the Government conceded that plea-stage counsel provided inadequate representation. *Id*. The Government argued that Lee could not show that he was prejudiced, however, because he lacked any viable

16

defense to the charged offense. *Id.* Thus, had he gone to trial, Lee likely would have been convicted, been given a longer prison sentence, and still been deported. *Id.*

On writ of certiorari to the United States Supreme Court in *Lee*, the Court explained that the proper focus is on the defendant's decision making. *Id.* at 1966. Whether to plead guilty involves assessing the respective consequences of a conviction by plea and after trial. *Id.* When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. *Id.* That is, even a defendant without any viable defense might nevertheless choose to gamble on trial, "risking more jail time for whatever small chance there might be of an acquittal that would let him remain in the United States." *Id.*

Applying *Hill*, the Supreme Court noted that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1967. Rather, courts should look to "contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* There, Lee presented evidence that deportation was a determinative issue during the plea discussions and that he had ties to this country, and to no other. *Id.* at 1968. The evidence showed that Lee asked his attorney repeatedly whether there was any risk of deportation. *Id.* And, Lee and his counsel testified that Lee would have gone to trial had he known about the deportation consequences. *Id.* The Court, in

17

reversing and remanding the case, held that Lee demonstrated a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 1969.

**B.    Analysis**

**1.    *Deficient Performance***

Here, appellant asserts that his trial counsel's performance was deficient because counsel failed to accurately advise him prior to entering his plea that pleading guilty to the charged offense would subject him to mandatory deportation. The State concedes in its brief that "appellant is correct when he notes that the deportation consequences in his case are clear" and that "if appellant's counsel told him he would not be subject to deportation if he received deferred adjudication, this advice does constitute deficient performance."

Federal law provides that "[a]ny alien who at any time after admission [to the United States] has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B). The term "alien" means any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3). The term "conviction" means

18

a formal judgment of guilt of the alien entered by a court, or, if adjudication of guilt has been withheld, where . . . a judge or jury has found the alien guilty or the alien *has entered a plea of guilty* or nolo contendere or has admitted sufficient facts to warrant a finding of guilty, *and . . . the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed*.

8 U.S.C. § 1101(a)(48)(A) (emphasis added). Further, "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law *regardless of any suspension of the imposition or execution of that imprisonment or sentence* in whole or in part." 8 U.S.C. § 1101(a)(48)(B) (emphasis added).

When an alien is convicted of an offense involving a controlled substance, "his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal." *Ex parte Aguilar*, 537 S.W.3d 122, 126–27 (Tex. Crim. App. 2017) (internal quotations omitted). In certain circumstances, the Attorney General may, in its discretion, waive the application of the removal requirement "insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h). Here, however, appellant pleaded guilty to possession of over 2000 pounds of marihuana. Thus, appellant's deportation became presumptively mandatory and virtually certain upon his guilty plea to the charged offense. *See Padilla*, 130 S. Ct. at 1483.

19

The record shows that appellant, in his sworn affidavit, averred that his trial counsel, Cheadle, told him that pleading guilty would not have immigration consequences, as follows:

> I told [Cheadle] that I wanted to have a jury trial and did not want to plead guilty. . . . [Cheadle] decided that instead of going to trial I should take a plea agreement. *He stated this is the best chance for me to get probation. [Cheadle] told me that if I plead guilty to a PSI that the Judge would give me a deferred probation and that this would not have immigration consequences for me.* I would have chosen to go to trial as I originally kept insisting on doing, if I would have been told that pleading guilty would have immigration consequences and that I would be subjected to mandatory deportation as a result.

(Emphasis added.) The record further shows that appellant's trial counsel, in a motion he filed to withdraw appellant's plea, stated that, at the time the plea was entered, appellant and counsel both understood that appellant had the possibility of receiving a suspended sentence that would *not* result in his deportation:

> At the time of the admission of guilt, [appellant] and Counsel understood the possibility of probation to be a Deferred Adjudication Probation which [would], at the time, be considered a non-conviction, and thus not a deportable offense for [appellant], who is a legal permanent resident.
>
> . . . Since that time, it has become apparent that ANY drug charges are meriting deportation and removal proceedings. When faced with this prospect, Counsel and [appellant] filed a Motion to withdraw [guilty] plea, which was denied on August 24, 201[8].
>
> . . . .
>
> . . . [Appellant] requested the withdrawal of his plea, as soon as the intentions of the administration and ICE became apparent and undeniable. There has been no plea agreement reached and sentence has not been pronounced. In addition, [appellant] is asserting a claim

20

of actual innocence, and is requesting a fair trial [by] jury, as is his right under the law.

Counsel also testified at a hearing on the motion that he *did not* inform appellant prior to entering his plea about the deportation consequences of pleading guilty:

> [W]e became aware of the fact that with this type of plea that there are immigration consequences and that he [appellant] could be deported for this. I am not an immigration attorney. We did speak with one, and we were advised of some of the possible consequences. After speaking with my client after that first hearing, he did want to withdraw his plea. He did initially plea[d] guilty and for—to do a PSI in front of this Court. Since then we've—we have changed our minds based on the fact that it will have consequences, severe consequences for my client, that he might get deported. . . . Your Honor, we are asking this Court to reconsider our request to withdraw based on the serious nature of the consequences and that— that the consequences became—came to light for my defendant after his initial plea request.

This evidence reflects counsel's first-hand knowledge of the circumstances surrounding appellant's plea and that counsel did not correctly advise appellant of the deportation consequences prior to entering his plea. *See State v. Guerrero*, 400 S.W.3d 576, 585 (Tex. Crim. App. 2013) (statements of attorney on record may be considered only if attorney is "speaking from first-hand knowledge"); *see also Torres*, 483 S.W.3d at 49–50; *see also Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (internal quotations omitted)); *cf. Guerrero*, 400 S.W.3d at 586 ("In this case,

habeas counsel had no personal, first-hand knowledge of the events surrounding Appellee's plea in 1998; thus, counsel's statements were not a description of the facts as remembered from the former plea proceeding.").

In *Padilla*, the defendant, a Honduran national and lawful permanent resident, was charged with transporting a large amount of marihuana. 559 U.S. at 359. Defense counsel assured the defendant that a guilty plea and subsequent conviction would not subject him to removal. *Id.* at 368. However, the removal statute "clearly, succinctly, and explicitly" defined removal as a consequence of the defendant's conviction. *Id.* Relying on his counsel's erroneous advice, the defendant pleaded guilty to the drug charges, making his deportation virtually mandatory. *Id.* at 359. The Supreme Court, in a postconviction proceeding, noted that the consequences of the defendant's plea "could easily be determined from reading the removal statute." *Id.* at 369. Because the removal statute was clear, the Court held that constitutionally competent counsel would have advised the defendant that his conviction for drug distribution made him subject to automatic deportation. *Id.* at 360. And, taking as true counsel's failure to do so, the Court held that the defendant's counsel was constitutionally deficient. *Id.*

Similarly, here, because the deportation consequence of pleading guilty to the charged offense was clear, trial counsel had a duty to inform appellant that, if he chose to plead guilty, his subsequent removal was not merely a possibility but was

presumptively mandatory and virtually certain. *See id.* at 369; *see also Torres*, 483 S.W.3d at 44–45. A trial court's admonishments are "irrelevant in determining whether error occurred under the first . . . prong." *Kayode*, 777 F.3d at 728 ("It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy." (quoting *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014)). Because the record reflects that trial counsel did not properly inform appellant of the specific consequences of his guilty plea, we hold that counsel's performance was deficient. *See Torres*, 483 S.W.3d at 46.

## 2. *Prejudice*

With respect to the second prong, appellant argues that he was harmed because his trial counsel's incorrect advice caused appellant to waive a trial and plead guilty, making deportation a certainty. He asserts that, had he been properly advised, he would not have pleaded guilty and would have instead insisted on going to trial. As evidence of the actions he would have taken at the time of his plea, had his trial counsel properly informed him of the consequences of pleading guilty to the charged offense, appellant presents his affidavit and that of his trial counsel's paralegal, Swann. *See Lee*, 137 S. Ct. at 1966–67; *see also Frangias v. State*, 450 S.W.3d 125, 132–33 (Tex. Crim. App. 2013) (considering affidavit of paralegal in

23

reviewing claim of ineffective assistance of counsel). Appellant also relies on Cheadle's statements in his motion to withdraw the plea.

In his affidavit, appellant testified that he did not want to plead guilty, that he repeatedly told his trial counsel, Cheadle, that he wanted to go to trial, and that, had Cheadle told him that pleading guilty would subject him to mandatory deportation, he would not have pleaded guilty and would have instead chosen to go to trial:

> *I told [Cheadle] that I wanted to have a jury trial and did not want to plead guilty.* I continued to ask [Cheadle] what evidence the State had against me. [Cheadle] would not answer my questions. The majority of conversations between [Cheadle] and I were about his vehicles he continued to have me repair for him. . . . I would occasionally remind [Cheadle] that he is representing me in a criminal case and that we needed to discuss how he would present my defense in trial. [Cheadle] would say things like "keep the faith" or "I will make it happen." Nothing legal, no strategy and *just ignored my requests for a jury trial. [Cheadle] decided that instead of going to trial I should take a plea agreement. He stated this is the best chance for me to get probation. [Cheadle] told me that if I plead guilty to a PSI that the Judge would give me a deferred probation and that this would not have immigration consequences for me.* **I would have chosen to go to trial as I originally kept insisting on doing, if I would have been told that pleading guilty would have immigration consequences and that I would be subjected to mandatory deportation as a result.**

(Emphasis added.)

In her affidavit, Cheadle's paralegal, Swann, corroborates appellant's testimony. Swann testified that, in the months preceding his plea, appellant was in the midst of meetings with immigration officials about his citizenship and that he wanted to go to trial:

24

I worked as a paralegal for William Cheadle *from June 2017 until February 2018.* During my employment with The Cheadle Law Firm, [appellant] became a client of [Cheadle] because he had a Possession of Marijuana Case that was pending in Harris County, Texas. It came to my attention shortly after [appellant] became a client of The Cheadle Law Firm that he was a permanent resident of the United States and not a United States Citizen. I brought this to the attention of [Cheadle]. *[Appellant's] girlfriend, Gloria did call the office at one point and spoke to me about whether or not I thought that [appellant] should try to reschedule his citizenship. I gave [Cheadle] the information and let him know that Gloria and [appellant] were wanting his advice about whether or not to reschedule the immigration meeting or to wait. [Cheadle] stated that it did not matter, that [appellant] should reschedule his meeting with immigration and get his citizenship completed if that is what he wanted to do.* I again reiterated to [Cheadle] that this situation, even while pending, has significant potential immigration consequences for his client [appellant] and that he needs to be able to advise him properly on this issue. I also knew and conveyed to [Cheadle] at that time that a deferred probation in a Possession of Marijuana case more than 0-2 oz would in fact trigger the deportation process for [appellant]. . . .

I asked [Cheadle] what his plan is with this case. He stated to me "I am going to get [appellant] a deferred probation." I then told him that even a deferred probation would have immigration consequences since [appellant] is not a United States Citizen. I told [Cheadle] that he would have to tell [appellant] that he would be deported. [Cheadle's] response to me was "that [appellant's] immigration issues were not his problem.". . . . It was clear that [Cheadle] had no idea about the immigration consequences facing [appellant] and admittedly had not heard of or even read Padilla v. Kentucky. I know he did not think this was important because he told me the same.

. . . [S]hortly after I had stopped working for the Cheadle law firm[,] [appellant] called wondering where Cheadle] was and why he had not arrived at Court. . . . *[Appellant] then stated to me that he wanted to go to trial and had been discussing his desire for a trial with [Cheadle].*

Swann's affidavit shows that she ceased working for Cheadle in February 2018. The

record shows that appellant pleaded guilty in July 2018.

25

Cheadle admitted, in the motion he filed to withdraw the plea shortly after it was entered, that, at the time of the plea, the matter of deportation was at issue:

> *At the time of the admission of guilt, [appellant] and Counsel understood* the possibility of probation to be a Deferred Adjudication Probation which [would], at the time, be considered a non-conviction, and thus not a deportable offense for [appellant], who is a legal permanent resident.

(Emphasis added.)

Thus, appellant's evidence of the circumstances occurring at the time of his plea support his assertion that he would have proceeded to trial had he known the immigration consequences of his plea. *See Lee*, 137 S. Ct. at 1966–67; *Torres*, 483 S.W.3d at 48–49 ("[W]here the totality of the circumstances indicate that a defendant has placed a particular emphasis on the immigration consequences of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice."); *see also Kayode*, 777 F.3d at 725.

With respect to whether a reasonable defendant would have rationally chosen to go to trial, the record shows that the State had strong evidence against appellant. *See, e.g.*, *Kayode*, 777 F.3d at 727–28 (holding that overwhelming evidence against defendant made it unlikely that rational person in his position would have proceeded to trial and weighed against prejudice finding). "Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if [the State] offers one." *Lee*, 137 S. Ct. at 1966. Here, however, *appellant entered an open*

26

*plea.* And, the record shows that appellant moved to withdraw his plea, which also weighs in favor of finding prejudice. *Kayode*, 777 F.3d at 727–28.

Although the record does not contain appellant's familial ties to the United States, or elsewhere, Swann's affidavit states that appellant was in the midst of meeting with immigration officials about his citizenship.

In considering the trial court's admonishments, the record shows that appellant, in conjunction with entering his plea, signed boilerplate admonishments generally informing him about the variety of possible adverse immigration consequences (i.e., deportation, inadmissibility, or denial of naturalization) to which he *could* be subject. The plea papers admonish: "If you are not a citizen of the United States of America, a plea of guilty . . . for the offense with which you are charged in this case *may* result in your deportation." (Emphasis added.)

In the Immigration Admonishments, appellant initialed paragraphs stating that he is not a United States citizen and: "I understand that *a conviction* of certain [sic] *will* trigger my removal from this country and/or result in my inability to re-enter this country should I choose to leave. These crimes include: . . . Crimes involving controlled substance. . . ." (Emphasis added.) Although the Admonishments state that "a conviction" "will trigger" removal, Cheadle incorrectly advised appellant that deferred adjudication did *not* constitute "a conviction" for immigration purposes.

Appellant initialed an admonishment stating: "I understand that *a sentence of community supervision (probation or deferred adjudication) is considered a 'conviction'* under federal law and *could* still result in my removal from inadmissibility [sic] to this country." Importantly, the admonishment states only that such "could" result in removal.

Although appellant initialed a series of paragraphs in which he stated that his trial counsel had advised him about the immigration consequences of his plea and that, based on that advice, he had voluntarily chosen to plead guilty regardless of any removal consequences he might encounter, the record also shows that Cheadle admits that he did not properly and specifically inform appellant that his removal was presumptively mandatory and virtually certain.

Further, although the plea papers reflect that the trial court properly admonished appellant pursuant to Code of Criminal Procedure article 26.3(a), the statute requires only that the trial court inform a defendant that his guilty plea "may" result in deportation, inadmissibility, or a denial of naturalization. *See* TEX. CODE CRIM. PROC. art. 26.13(a)(4).

A defendant who faces almost certain deportation, as here, is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty. *See Padilla*, 130 S. Ct. at 1483. Again, "when the deportation consequence is truly clear," counsel's "duty to give correct advice is

28

equally clear." *Id.* Here, the law is clear that, upon pleading guilty in this case, appellant's deportation became presumptively mandatory and virtually certain. *See id.* At issue is that counsel admittedly did not properly explain the significance of the waivers to appellant. There is no controverting evidence in the record before us. The trial court's general admonishments do not cure the prejudice arising from counsel's failure to specifically advise appellant of the consequences of his plea.

We hold that appellant established by a preponderance of the evidence that his trial counsel's representation constituted deficient performance and that, but for counsel's deficient advice, appellant would not have waived a trial and pleaded guilty. We hold that counsel's ineffective assistance rendered appellant's plea involuntary and thus the trial court erred in denying his motion for new trial.

Accordingly, we sustain appellant's first and third issues.

Having sustained appellant's first and third issues, we do not reach his second and fourth issues, in which he challenges the trial court's denial of his motion to withdraw his plea and of his amended motion for new trial.

## Conclusion

We reverse the trial court's judgment and remand the case for a new trial.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).